HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFF OLBERG, an individual, CECILIA ANA
PALAO-VARGAS, an individual, MICHAEL
CLOTHIER, an individual, and JACOB
THOMPSON, and individual, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

      v.

ALLSTATE INSURANCE COMPANY, an
Illinois Corporation and ALLSTATE FIRE
AND CASUALTY INSURANCE COMPANY,
an Illinois Corporation

      Defendants.

No. 18-cv-00573

FIRST AMENDED COMPLAINT

JURY DEMAND



# TABLE OF CONTENTS

**Page**

I. NATURE OF THE CASE ........................................................................... 1

II. JURISDICTION ...................................................................................... 2

III. VENUE .................................................................................................. 2

IV. PARTIES ............................................................................................... 2

V. FACTUAL ALLEGATIONS ................................................................... 3

    A. Allstate relies on manipulated data to underpay total loss claims. ........................ 3

    B. Allstate underpaid the total loss claims of Plaintiffs. ............................................ 7

VI. CLASS ACTION ALLEGATIONS .......................................................... 10

FIRST CAUSE OF ACTION (BREACH OF CONTRACT) ...................................... 12

SECOND CAUSE OF ACTION (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) ........................................................ 13

THIRD CAUSE OF ACTION (CONSUMER PROTECTION ACT— VIOLATION OF WASH. REV. CODE § 19.86.020) ...................................... 14

FOURTH CAUSE OF ACTION (DECLARATORY AND INJUNCTIVE RELIEF) ................................................................................................ 14

PRAYER FOR RELIEF ...................................................................................... 15

JURY DEMAND ................................................................................................ 16



# I.     NATURE OF THE CASE

1.     When a person's vehicle is totaled in an accident, an automobile insurance company must not underpay claims by manipulating the data used to value the vehicle. Specifically, Washington law prohibits insurance companies from valuing a vehicle by comparing it to vehicles of a different type. Washington law also prohibits insurance companies from reducing claim values with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles that bear no relation to actual cash value. An insurer must not misstate or conceal material facts that bear upon its estimate of value.

2.     In negotiating and settling total loss claims, Allstate Insurance Company and Allstate Fire and Casualty Insurance Company (collectively, Allstate) flagrantly violate these rules. First, when Allstate selects vehicles to compare with the loss vehicle, it includes gray-market vehicles—vehicles manufactured for consumers in foreign countries and imported into the U.S.—that are not comparable to the loss vehicle and are worth less due to their gray-market status. Allstate misrepresents the gray-market vehicles as comparable while failing to disclose their gray-market status, deceiving consumers and cheating them on their claims.

3.     Second, Allstate reduces the value of comparable vehicles by an arbitrary amount that it deems a "condition adjustment" without itemizing or explaining the basis for the adjustment as required by Washington law. Allstate applies a uniform "condition adjustment" to multiple comparable vehicles involved in a valuation without even distinguishing one vehicle from the next. These arbitrary and unjustified condition adjustments artificially and improperly reduce claim payments by hundreds or thousands of dollars.

4.     Allstate's systematic under-valuations and underpayments violate its insurance contracts as well as Washington statutes governing the adjustment of total loss claims. Allstate's actions also violate Washington prohibitions on consumer deception and settling insurance claims in bad faith.

5.     Plaintiffs bring this class action on behalf of all those insured under automobile insurance policies issued in the State of Washington by Allstate Insurance Company and Allstate Fire and Casualty Company whose claim valuations were based in whole or in part upon the

FIRST AMENDED COMPLAINT - 1
Case No. 18-cv-00573
010743-12 1027621 V1

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  values of gray-market vehicles and those whose claim valuations were based upon the values of

2  comparable vehicles that were reduced by artificial, unexplained "condition adjustments."

3       6.     Plaintiffs seek for themselves and the class compensatory damages, treble

4  damages, and attorney's fees, as well as declaratory and injunctive relief.

## II.     JURISDICTION

6       7.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28

7  U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in

8  controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

9  Plaintiffs are citizens of Washington and Allstate is a citizen of Illinois (where it is incorporated

10  and has its principal place of business).

11       8.     This Court has personal jurisdiction over Allstate Insurance Company because

12  Allstate Insurance Company is a corporation licensed and authorized to do business in

13  Washington and has transacted business in King County, Washington. This Court has personal

14  jurisdiction over Allstate Fire and Casualty Insurance Company because Allstate Fire and

15  Casualty Insurance Company is a corporation licensed and authorized to do business in

16  Washington and has transacted business in King County, Washington. This Court has personal

17  jurisdiction over Plaintiffs because Plaintiffs consent to this Court's jurisdiction.

## III.     VENUE

19       9.     Venue is proper in this District under 28 U.S.C. § 1391 because this is the District

20  in which Plaintiffs' insurance benefits were denied and the cause of action arose.

## IV.     PARTIES

22       10.     Plaintiffs Jeff Olberg, Cecilia Ana Palao-Vargas, Michael Clothier, and Jacob

23  Thompson were at all relevant times residents of the State of Washington.

24       11.     At all times pertinent, Plaintiff Jeff Olberg was insured under a policy of

25  automobile insurance with Allstate Insurance Company that included coverage for the total loss

26  of a vehicle.



12. At all times pertinent, Plaintiff Cecilia Ana Palao-Vargas was insured under a policy of automobile insurance with Allstate Fire and Casualty Insurance Company that included coverage for the total loss of a vehicle.

13. At all times pertinent, Plaintiff Michael Clothier was insured under a policy of automobile insurance with Allstate Fire and Casualty Insurance Company that included coverage for the total loss of a vehicle.

14. At all times pertinent, Plaintiff Jacob Thompson was insured under a policy of automobile insurance with Allstate Fire and Casualty Insurance Company that included coverage for the total loss of a vehicle.

15. Allstate Insurance Company is an Illinois corporation with its principal place of business in Illinois.

16. Allstate Insurance Company is an underwriting company wholly owned by the Allstate Corporation, a Delaware corporation.

17. Allstate Fire and Casualty Insurance Company is an Illinois corporation with its principal place of business in Illinois.

18. Allstate Fire and Casualty Insurance Company is also wholly owned by the Allstate Corporation.

## V.   FACTUAL ALLEGATIONS

**A.   Allstate relies on manipulated data to underpay total loss claims.**

19. All allegations contained in previous paragraphs are incorporated herein by reference.

20. Allstate Insurance Company and Allstate Fire and Casualty Company file a consolidated annual statement as members of The Allstate Insurance Group. The Allstate Insurance Group is the fourth-largest personal lines insurance company in the United States. Members of The Allstate Insurance Group, including Defendants, issue automobile insurance policies to consumers in the State of Washington.

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

21.     The Allstate Insurance Group is made up of two distinct "brands" the Allstate Brand and the Esurance Brand.  Allstate Insurance Company and Allstate Fire and Casualty Insurance Company are both a part of the Allstate Brand.

22.     The Allstate Brand touts itself as a reliable and trustworthy source of insurance coverage. In its advertising campaigns, the Allstate Brand has adopted the motto, "You're in good hands." On its website, the Allstate Brand claims, "In every aspect of our business, we strive to do the right thing—for our customers, our employees, our communities and our world." But when its customers' cars are wrecked in life-changing accidents, Allstate betrays these principles, playing games and putting profits ahead of people. Allstate fudges the numbers to shortchange vulnerable consumers, who have often lost their primary car and are relying on Allstate to pay fair value so they can afford to buy a replacement.

23.     The Defendants work in concert to create policies and infrastructure that cheat their customers out of monies to which they are entitled.

24.     As wholly owned subsidiaries of the same company, Allstate Insurance Company and Allstate Fire and Casualty Insurance Company share a common corporate headquarters, file a combined annual report and tax return, and use valuation reports from CCC Information Services Inc. that are indistinguishable in form between the insurers, providing a uniform method of undervaluing total loss claims for Allstate insureds.

25.     Upon information and belief, Allstate follows a single set of guidelines, methods, and policies regarding the application of condition adjustments and the use of gray market vehicles to systemically undervalue total loss claims.

26.     Allstate's standard form automobile policy provides coverage for the total loss of a vehicle in an accident.

27.     For total loss claims, Allstate must base any cash settlement offer on the "actual cash value of a comparable motor vehicle." WASH. ADMIN. CODE § 284-30-391(2).

28.     In the event of a total loss, Allstate promises in its policy that it will pay the insured the "actual cash value" of the vehicle before the accident.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

29.     For total loss claims, Allstate must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available . . . using appropriate deductions or additions for options, mileage or condition when determining comparability." WASH. ADMIN. CODE § 284-30-391(4)(b).

30.     For total loss claims, "[a]ny additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts." WASH. ADMIN. CODE § 284-30-391(5)(d). The purpose of this requirement is to ensure that any adjustments are reasonable and justified and to ensure that consumers have the ability to evaluate and challenge any deductions that are improper.

31.     Systemically, Allstate fails to offer and pay the actual cash value.

32.     Allstate bases its offers and payments on manipulated data and reports that do not meet Allstate's duties under Washington law, imposing arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles and basing its valuations on gray-market vehicles that are not comparable to the insured vehicle.

33.     To calculate its offer and payment, Allstate obtains a valuation report from a third-party company called CCC Information Services, Inc. ("CCC"). These reports purport to contain values for comparable used vehicles recently sold or for sale in the geographic area of the insured. The reports contain a purported valuation for the loss vehicle based upon the data in the report. Allstate instructs CCC as to what specific data to include in the report as the basis for the valuation, including whether to include condition adjustments to comparable vehicles and whether to base the valuation on gray-market vehicles that are not comparable to the insured vehicle.

34.     Allstate offers its insureds a claim settlement equivalent to the valuation amount found on the report.

35.     The valuation reports also reduce the estimated values of comparable vehicles, citing a "condition adjustment," but fail to itemize or explain the basis for these condition adjustments. These condition adjustments are arbitrary and unjustified. Indeed, even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

comparable vehicles by the same amount, down to the last dollar, without any itemization or explanation for the amount. These blind and arbitrary reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The application of an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

36.     The valuation reports base their calculations upon the values of gray-market vehicles instead of vehicles that are comparable to the loss vehicle. Gray-market vehicles are vehicles manufactured for markets outside the United States and later imported and offered for sale in the United States.

37.     Gray-market vehicles are disfavored in the marketplace and generally less valuable than vehicles manufactured for the U.S. market. The prices of gray-market vehicles are depressed for several reasons:

> a.     For a given year, make, and model, vehicles made for non-U.S. markets such as Canada have different safety and environmental specifications from vehicles made for the U.S. market and require modifications to comply with U.S. law.
>
> b.     Gray-market vehicles frequently lack a clear chain of title, increasing the risk that the vehicle has been stolen.
>
> c.     Gray-market vehicles are manufactured with an instrument panel and odometer that uses kilometers instead of miles, and the conversion from kilometers to miles creates a risk that the odometer has been manipulated.
>
> d.     The prices of gray-market vehicles are depressed by arbitrage. Because vehicle supply and demand varies from one country to the next, the cost of a gray-market vehicle is often lower than a vehicle of the same year, make, and model made for and sold in the United States.

38.     For these reasons, a gray-market vehicle is not "a comparable motor vehicle" for a vehicle of the same year, make, and model made for the U.S. market. The use of gray-market vehicles to calculate the value of the loss vehicle artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.



**B.    Allstate underpaid the total loss claims of Plaintiffs.**

39.    Plaintiffs each owned a vehicle which was involved in an accident and damaged so seriously as to be a total loss.

40.    Plaintiffs made claims with Allstate for the total loss of the vehicles. Allstate provided written settlement offers to each plaintiff.

41.    Allstate based each settlement offer upon a valuation report obtained from third-party CCC.

42.    Plaintiff Jeff Olberg was the owner of a 2013 Ford Fusion Hybrid that was totaled in an accident in 2016. Allstate offered to pay, and did pay, $16,870.68 (minus deductible) attributable to the value of the vehicle, citing its CCC valuation report. The valuation report listed values of nine different comparable vehicles and applied a uniform condition adjustment of $775 to all nine of them without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the amount of these comparable vehicles by exactly the same amount, regardless of any individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $775. Plaintiff Olberg was forced to incur additional costs to hire a public adjuster and other out of pocket costs while the payment of his claim was delayed.  These additional costs and the substantial delay were a result of Allstate's unlawful valuation practices

43.    Plaintiff Cecilia Ana Palao-Vargas was the owner of a 2011 Hyundai Sonata that was totaled in an accident in 2015. Allstate offered to pay, and did pay, $15,034.93 (minus deductible) attributable to the value of the loss vehicle, citing its CCC valuation report. The valuation report listed values of nine different comparable vehicles and applied a uniform condition adjustment of $684 to all nine of them without itemizing or explaining the basis of the adjustment as required by Washington law. The report reduced the amount of each comparable vehicle by exactly the same amount, regardless of individual differences in the condition of the vehicles. These blanket adjustments were arbitrary and unjustified, and they resulted in an underpayment of $684.

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

44.     The valuation report for Plaintiff Palao-Vargas's claim also based its calculations on the value of at least one gray-market vehicle instead of a comparable vehicle as required by Washington law. The valuation report itself specifies on page 9 that Plaintiff's wrecked vehicle is not a gray-market vehicle. At the same time, the valuation report misstates that the gray-market vehicle is comparable to Plaintiff's vehicle and fails to disclose the gray-market status of the gray-market vehicle. The use of a gray-market vehicle results in an underpayment to be determined based upon the economic impact of using gray-market vehicles for vehicle pricing analysis.

45.     Through the valuation report, Allstate and CCC have the ability to determine whether a vehicle is a gray-market vehicle and did in fact determine that Plaintiff Palao-Vargas's vehicle was not a gray-market vehicle. Nonetheless, Allstate misstates that the gray-market vehicle was comparable to the loss vehicle and never discloses that it is comparing the loss vehicle to a gray-market vehicle. In 2017, Allstate based a settlement offer on a valuation report that contained four gray-market vehicles.

46.     Plaintiff Michael Clothier was the owner of a 2012 Dodge 1500 Laramie Longhorn that was totaled in an accident in 2016. Allstate initially offered to pay, $22,641.00 (minus deductible) attributable to the value of the loss vehicle, citing its CCC one valuation report. All of the vehicles used to determine the value of Plaintiff Clothier's vehicle in the first valuation report were gray-market vehicles.

47.     Upon discovery of the use of gray-market vehicles in the valuation of his loss vehicle, Plaintiff Clothier notified Allstate and requested an updated valuation report using non-gray-market vehicles. All the comparable vehicles listed in the second CCC one valuation report were also gray-market vehicles.  It was not until Plaintiff Clothier received his fourth and final CCC one valuation report and settlement offer that Allstate offered Plaintiff Clothier a settlement amount that did not rely upon the value of gray-market vehicles.

48.     Additionally, each of the valuation reports received by Plaintiff Clothier listed applied a uniform condition adjustment of approximately $1,700 to all of the comparable vehicles without itemizing or explaining the basis of the adjustment as required by Washington

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   law. The first three reports reduced the amount of each comparable vehicle by exactly $1,719,

2   regardless of individual differences in the condition of the vehicles. The final CCC one valuation

3   report adjusted each of the six comparable vehicles by $1,749, regardless of the individual

4   differences in those vehicles. These blanket adjustments were arbitrary and unjustified. As a

5   result of Allstate's unlawful valuation practices and the need to challenge them, Plaintiff was

6   forced to contest the valuation and the payment of Plaintiff Clothier's claim was delayed by an

7   appraisal process. The appraisal determined that Plaintiff Clothier's vehicle was worth $27,000,

8   nearly 20% more than Allstate's initial offer based on the faulty valuation reports. Allstate based

9   its payment on this appraisal, and Plaintiff Clothier incurred out-of-pocket losses because the

10   payment of his claim was delayed as a result of Allstate's unlawful valuation practices.

11         49.    Plaintiff Jacob Thompson was the owner of a 2013 Ford Edge Limited Edition

12   that was total in an accident in 2018. Allstate initially offered to pay $15,609.00 (minus

13   deductible) attributable to the value of the loss vehicle, citing its CCC valuation report. The

14   valuation report listed values of twelve different comparable vehicles and applied a uniform

15   condition adjustment of $553 to all twelve of them without itemizing or explaining the basis of

16   the adjustment as required by Washington law. The report reduced the amount of each

17   comparable vehicle by exactly the same amount, regardless of individual differences in the

18   condition of the vehicles. These blanket adjustments were arbitrary and unjustified. Upon

19   discovering that Allstate had grossly undervalued his vehicle, Plaintiff Thompson challenged the

20   valuation and Allstate commissioned a new CCC report.  The second report valued Plaintiff

21   Thompson's vehicle at $15,669.00.  The updated report also applied an unexplained, unitemized,

22   uniform condition adjustment of $553 to each of the twelve comparable vehicles. Again, Plaintiff

23   Thompson challenged the valuation.  The third report listed values of eleven different

24   comparable vehicles, but similar to the previous reports, applied an unexplained, uniform

25   condition adjustment of $528 to each of the comparable vehicles, regardless of individual

26   differences resulting in a valuation of $16,443.00.

27         As a result of Allstate's continued unlawful valuation practices and the need to challenge

28   them, Plaintiff was forced to contest the valuation and the payment of Plaintiff Thompson's

HAGENS BERMAN

claim was delayed by an appraisal process. The appraisal determined that Plaintiff Thompson's vehicle was worth $18,200, exceeding Allstate's initial offer based on the faulty valuation reports by more than 15%. Allstate based its payment on this appraisal, and caused out-of-pocket losses to Plaintiff Thompson because Plaintiff Thompson was forced to pay nearly $1,000 to hire a public adjuster, paid additional rental car payments, and incurred other out of pocket costs while the payment of his claim was delayed.  These additional costs and the substantial delay were a result of Allstate's unlawful valuation practices.

50.     Upon information and belief, Allstate systemically relies upon the value of gray-market vehicles to settle total loss claims.

51.     Allstate has acted with at least reckless disregard of the rights of others by manipulating the numbers to settle total loss claims. Allstate has devised valuation methods that are unfair, misleading, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates in the settlement process.

52.     Allstate's practices have cost consumers tens of millions of dollars in losses as their claims go underpaid. Meanwhile, Allstate reaps millions in wrongful profits by betraying the trust of its consumers.

## VI.     CLASS ACTION ALLEGATIONS

53.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the classes defined below), pursuant to Federal Rule of Civil Procedure 23.

54.     The class consists of two subclasses as follows:

> All individuals insured by Allstate under an Allstate private passenger vehicle policy who, from the earliest allowable time to the present,
>
> (1)     Received a first-party total loss settlement or settlement offer based in whole or in part on the price of one or more gray-market vehicles; or



(2)    Received a first-party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

55.    While the exact number of members cannot be determined, the class consists at a minimum of thousands of persons located throughout the State of Washington. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Allstate.

56.    There are questions of fact and law common to the class, including the following:

i.    Whether Allstate used the values of gray-market vehicles to calculate the values of loss vehicles;

ii.    Whether Allstate applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;

iii.    Whether, through each of the foregoing practices, Allstate breached its contracts with its insureds;

iv.    Whether, through each of the foregoing practices, Allstate committed a breach of the common law duty of good faith and fair dealing;

v.    Whether, through each of the foregoing practices, Allstate violated the Insurance Fair Conduct Act, WASH. REV. CODE § 48.30.010 *et seq.*;

vi.    Whether, through each of the foregoing practices, Allstate violated regulations governing unfair claims settlement practices including WASH. ADMIN. CODE § 284-30-330 *et seq.*;

vii.    Whether, through each of the foregoing practices, Allstate violated the Consumer Protection Act, WASH. REV. CODE § 19.86.020;

viii.    Whether Allstate's use of gray-market vehicles and improper condition adjustments to value loss vehicles caused injury to Plaintiffs and the class;

ix.    Whether Allstate's actions were unreasonable, frivolous, or unfounded;

x.    Whether Allstate's actions were reckless, malicious, or willful;

xi.    Whether Plaintiffs and the class are entitled to an award of compensatory damages;

xii.    Whether Plaintiffs and the class are entitled to an award of treble damages;

xiii.    Whether Plaintiffs and the class are entitled to an award of attorney's fees;



1

2

       xiv.    Whether Plaintiffs and the class are entitled to declaratory and injunctive relief.

57.    Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of those of all members of the class. Plaintiffs' claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiffs and all class members have sustained damages arising out of Allstate's common course of conduct as outlined herein. The damages of each class member were caused by Allstate's wrongful conduct.

58.    Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the class members.

59.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Allstate's actions are generally applicable to the class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a whole.

60.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

61.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

62.    The Allstate insurance contracts specifically provide for payment of the "actual cash value" of a vehicle deemed a total loss as a result of an automobile accident.

63.    Allstate has breached the contracts by not offering to settle and by not settling claims based upon the actual cash value of loss vehicles. Allstate departed from the use of actual



cash values by (1) basing its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing its valuation and payment of the claim upon values of gray-market vehicles, which by definition are not comparable to the loss vehicle and artificially depress the valuation by virtue of their gray-market status.

64.   Allstate's numerous breaches have resulted in a systematic failure to pay the actual cash value of total loss vehicles as required by contract.

65.   Allstate's breaches and violations have caused damage to Plaintiffs and the class.

### SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

66.   Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

67.   Allstate owed Plaintiffs and class members, as its insureds, a duty of good faith and fair dealing at all times during the existence of the insurance contracts and while providing automobile insurance coverage, including when handling total loss claims for its insureds.

68.   Allstate purposefully, in bad faith, and without regard to the rights of the Plaintiffs and the class, failed to pay the actual cash value of total loss vehicles. Allstate's actions breached the insurance contracts and were unreasonable, frivolous, and unfounded.

69.   Allstate's unfair acts and/or acts of bad faith include (1) basing its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) basing its valuation and payment of the claim upon values of gray-market vehicles, which by definition are not comparable to the loss vehicle and artificially depress the valuation by virtue of their gray-market status.

70.   Allstate breached the covenant of good faith and fair dealing with the aforementioned conduct.

71.   Allstate's breach of the obligation of good faith and fair dealing caused Plaintiffs and class members to incur damages as more fully set forth below.

FIRST AMENDED COMPLAINT - 13
Case No. 18-cv-00573
010743-12 1027621 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**THIRD CAUSE OF ACTION**
**(Consumer Protection Act—Violation of WASH. REV. CODE § 19.86.020)**

72.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

73.     Allstate's actions complained of herein are deceptive trade practices that have the capacity to and do deceive consumers, as Allstate unreasonably denied payment of benefits to Plaintiffs and the class and knowingly misrepresented the basis for its total loss valuations. Allstate failed to adopt and implement reasonable standards for the investigation of claims. Allstate failed to conduct a reasonable investigation regarding its claims payments. Allstate further made false representations as to the characteristics and benefits of its total loss coverage and insurance policies and represented that they were of a particular standard, quality, or grade, knowing they were not.

74.     Allstate's aforementioned conduct continues to occur in the course of Allstate's business. Allstate's conduct is part of a generalized course of conduct repeated on thousands of occasions, and thus has an impact on the public interest.

75.     Allstate's aforementioned conduct is in violation of the Washington Consumer Protection Act, in particular, but not limited to, WASH. REV. CODE § 19.86.020.

76.     As a result of Allstate's actions, Plaintiffs and class members incurred damages as more fully set forth below.

**FOURTH CAUSE OF ACTION**
**(Declaratory and Injunctive Relief)**

77.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

78.     Plaintiffs bring this cause of action for themselves and the class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain an auto insurance policy with Allstate, it is a violation of Washington law and the insurance contracts for Allstate to (1) base its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition



1    adjustment" that is not itemized or explained; and (2) base its valuation and payment of the claim

2    upon values of gray-market vehicles.

3        79.    This court has the power to declare the rights of said Allstate policyholders and

4    those who would be insured under such policies and who may suffer similar losses in the future,

5    as well as those who have suffered valuation-related losses.

6        80.    Plaintiffs, for themselves and on behalf of the class, seek a declaration of their

7    rights under the Allstate policy, and seek a declaration of the rights and liabilities of the parties

8    herein.

9        81.    With respect to Allstate's continuing unlawful practices, Plaintiffs have no plain,

10   speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an

11   injunction is in the public interest. Plaintiffs therefore seek an order permanently enjoining

12   Allstate from (1) basing its valuation and payment of the claim on values of comparable vehicles

13   that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is

14   not itemized or explained; and (2) basing its valuation and payment of the claim upon values of

15   gray-market vehicles.

## PRAYER FOR RELIEF

16

17      WHEREFORE, Plaintiffs pray for the following judgment:

18      A.    An Order certifying this action as a class action, including certifying each cause

19   of action under the appropriate subsection of Fed. R. Civ. P. 23;

20      B.    An Order appointing Plaintiffs as class representatives and appointing the

21   undersigned counsel to represent the class;

22      C.    Declaratory and injunctive relief, including an injunction requiring Allstate to

23   cease and desist from (1) basing its valuation and payment of the claim on values of comparable

24   vehicles that have been artificially reduced by an arbitrary and unjustified "condition

25   adjustment" that is not itemized or explained; and (2) basing its valuation and payment of the

26   claim upon values of gray-market vehicles;

27      C.    Treble damages under common law and by statute, under WASH. REV. CODE

28   § 19.86.090;

FIRST AMENDED COMPLAINT - 15
Case No. 18-cv-00573
010743-12 1027621 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

D.      Compensatory damages as warranted by Allstate's breach of the contracts of insurance, and its bad faith;

E.      An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed upon the class; and

F.      Such other and further relief as this Court may deem just, equitable, or proper, including a designation that any unclaimed monies may go to the next best use.

**JURY DEMAND**

Pursuant to Rule Local Rules W.D. Wash. LCR 38, Plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.


Dated:  January 25, 2019                    Respectfully submitted,

                                            HAGENS BERMAN SOBOL SHAPIRO LLP

                                            By ____*/s/ Steve W. Berman*_____
                                                Steve W. Berman
                                            Steve W. Berman (WSBA #12536)
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1301 Second Avenue, Suite 2000
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile:  (206) 623-0594
                                            steve@hbsslaw.com

                                            Robert B. Carey (*pro hac vice*)
                                            John M. DeStefano (*pro hac vice*)
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            11 West Jefferson Street, Suite 1000
                                            Phoenix, AZ  85003
                                            Telephone: (602) 224-2628
                                            rob@hbsslaw.com
                                            johnd@hbsslaw.com

                                            Marc A. Goldich (*pro hac vice*)
                                            AXLER GOLDICH LLC
                                            1520 Locust Street, Suite 301
                                            Philadelphia, Pennsylvania 19102
                                            Telephone: (267) 534-7400
                                            mgoldich@axgolaw.com



1

David Woloshin (*pro hac vice*)
Dina Ronsayro (*pro hac vice*)

2

ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600

3

Philadelphia, PA 19102
Telephone: (215) 790-0100

4

dwoloshin@astorweiss.com
dronsayro@astorweiss.com

5

6

Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019 a true and correct copy of the foregoing was filed

electronically by CM/ECF, which caused notice to be sent to all counsel of record.


Executed this 25th day of January, 2019.


HAGENS BERMAN SOBOL SHAPIRO LLP

By: s/ *Steve W. Berman*

Steve W. Berman, WSBA #12536

FIRST AMENDED COMPLAINT - 18
Case No. 18-cv-00573
010743-12 1027621 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594