THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFF OLBERG, an individual *et al.*, | CASE NO. C18-0573-JCC |
| Plaintiffs, | ORDER |
| v. | |
| ALLSTATE INSURANCE COMPANY, an Illinois corporation *et al.*, | |
| Defendants. | |

This matter comes before the Court on the parties' stipulated agreement regarding discovery of electronically stored information ("ESI") (Dkt. No. 80). The parties hereby stipulate that:

**A.  General Principles**

1.  An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.  The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses

should be reasonably targeted, clear, and as specific as possible.

3. All disclosures and productions made pursuant to this agreement are also subject to all other orders entered by this Court for this litigation. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any information produced in accordance with this agreement.

4. The parties and their attorneys do not intend by this agreement to waive their rights to the production, discoverability, confidentiality, attorney-client privilege, or attorney-work product protection as to any information addressed in this agreement. All parties preserve their attorney-client privileges, work product protections, and other relevant privileges, and there is no intent by the agreement or the production of information pursuant to the agreement to in any way waive or weaken these privileges. Nothing in this agreement addresses, limits, or determines the relevance, discoverability, or admission into evidence of any information. This agreement is not deemed to be a waiver by any party of the right to challenge the Court's jurisdiction over this litigation or to seek to enforce any arbitration agreement.

5. The parties agree to make a reasonable and good faith effort to come to an agreement regarding the production of "Claims Data Systems," which means all the internal databases or systems Allstate uses to track, document, process, value, keep record of, pay, analyze for risk or business purposes, and otherwise manage claims made by Allstate's insureds, individually or in the aggregate.

6. This agreement is effective on a going forward basis, and shall not have any retroactive applicability. Productions made and privilege logs served as of the date of filing of this stipulation need not be reproduced and re-served to be in accord with this agreement.

**B.  ESI Disclosures**

Within 30 days after the Local Civil Rule 26(f) conference, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians</u>.

a. Plaintiffs will provide a list of up to four custodians for each named Plaintiff, Allstate a list of up to 15 custodians, and CCC a list of up to eight custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation (including responsibilities and years of service when applicable), and the type of the information under his/her control.

b. No later than two months prior to the close of fact discovery, Plaintiffs or CCC may request from each other additional custodians who are likely to have discoverable ESI in their possession, custody, or control. Such requests must be made in good faith. Plaintiffs and CCC shall meet and confer regarding any disputes over additional custodians pursuant to this paragraph. Any disputes over additional custodians remaining after meet and confer shall be presented to the Court in accordance with Local Civil Rule 37(a)(2).

2. <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (e.g., shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the producing party shall make a good faith effort to provide a description of the services provided/data contained on the system within their knowledge and the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

//

**C.    Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the receiving party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall make all reasonable and proportional efforts to preserve discoverable ESI in their possession, custody, or control.

2. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

3. Absent a showing of good cause by the receiving party, the following categories of ESI need not be preserved and are not discoverable in this litigation:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last opened dates (see also Section (E)(5)).

    e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

        h.      Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

        i.      Recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats other than those voice messages for which a both the sender and recipient is a custodian designated pursuant to Section B of this agreement.

        j.      Contact lists and task lists from Outlook or similar programs.

        k.      Meeting notices and electronic calendar invitations from Outlook or similar programs other than those notice and invitations for which both the sender and at least one recipient is a custodian designated pursuant to Section B of this agreement or the staff responsible for calendar maintenance of a custodian.

        l.      Text messages and logs of calls made from mobile devices.

        m.      Litigation hold/retention instructions issued relating to this action.

        n.      Instant messaging communications, including Slack and Skype communications.

**D.    Privilege**

1.    With respect to documents protected by the attorney-client privilege or work-product privilege that are generated by the parties or their counsel of record after the filing of the complaint, the parties are not required to include any such information in privilege logs. The parties shall produce privilege logs for all other documents that predate the filing of this action, such as any communications between defendants that are withheld subject to a joint defense agreement.

2. If the producing party withholds documents from discovery because they are allegedly protected by a privilege recognized by state or federal law, the producing party shall provide a privilege log that provides the following information to the extent it is reasonably available to the producing party and itself does not reveal privileged information:

    a. A sequential number associated with each privilege log document.

    b. Bates Numbers (for produced documents that were slipsheet and produced as part of non-fully privileged families or for redacted documents).

    c. Bates Attach Range (or similar) to identify family relationship between the withheld and produced documents.

    d. A field indicating whether a document is redacted.

    e. The date of the document.

    f. The identity of the author.

    g. The identity of the recipients, copyees, or blind copyees.

    h. The title, subject, or file name.

    i. The nature of the privilege asserted (i.e., attorney-client privilege, work-product doctrine).

    j. A description of the nature of the documents, communications, or tangible things not produced or disclosed consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

3. For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names, the subject matter or title, and date created. Should the available metadata provide insufficient information for the purpose of evaluation the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

4. <u>Protocol for Logging E-Mail Chains</u>. Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds

of privilege, immunity, or any similar claim shall be logged as one document and shall be identified by the top-most e-mail in the chain that is withheld or redacted. The parties shall not be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this paragraph. This paragraph shall not be interpreted to excuse a producing party from producing responsive, non-privileged emails in an e-mail chain; if only certain emails contain privileged work product, the producing party shall produce the responsive, non-privileged emails and may redact the emails containing privileged communications. This paragraph shall not preclude a party from reviewing and producing only the most inclusive email in each chain, where an inclusive email is considered either the last email in an email branch or an email which has attachments that are not present in further emails in the chain.

5. <u>Protocol for Logging "Families"</u>. Each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.

6. <u>502(d) Order and Clawback Procedure</u>. This agreement is entered pursuant to Federal Rule of Evidence 502(d). Subject to the provisions of this agreement, if the producing party discloses information in connection with the pending litigation that the producing party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the producing party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

    a. This agreement protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

    b. Each party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege,

the Court hereby orders that disclosure of Protected Information in discovery conducted in this litigation shall not waive any claim of privilege or work product protection that the producing party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

    c. A producing party must notify the party receiving the Protected Information, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon receipt of notification, the receiving party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

    d. This agreement shall be interpreted to provide the maximum protection allowed to the disclosing party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this agreement. However, if for any reason, a Court finds that this section is inapplicable to Protected Information, then Federal Rule of Evidence 502(b) will apply in its absence.

**E.  ESI Discovery Procedures**

    1. <u>On-site inspection of electronic media</u>. Such an inspection shall not be permitted absent a demonstration by the receiving party of specific need and good cause or by agreement of the parties.

    2. <u>Search methodology</u>. The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any substantial effort is undertaken to search, review, and produce responsive documents. The

parties shall cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology.

In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

    a. The parties shall meet and confer in good faith to reach an agreement on the producing party's search terms and/or methodology to be used to locate ESI likely to contain discoverable information.

    b. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.

    c. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified under Section B.1 of this Agreement using the proposed search terms and provide a hit report to the receiving party within thirty days of finalizing the proposed list. Absent a showing of good cause, each search term or query returning more than 250 megabytes of data is presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, and similarly large file types.

    d. The receiving party will propose additional search terms in a good faith effort to narrow any unreasonable returns as defined in Section E.2.c of this Agreement within ten days of receipt of the producing party's hit report.

    e. The parties will repeat these steps in good faith until they reach an agreed upon list of finalized terms. The receiving party retains the right to make a good faith request for documents not returned through the ESI protocol set forth in this section. The producing party retains its right to challenge all requests for production.

3. Format. The parties agree that ESI will be produced in one of the following

formats: single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), or searchable PDF. Unless otherwise agreed to by the parties or reasonably necessary for redaction purposes, the producing party shall produce all spreadsheets, PowerPoints, and audio/video files in native format. The receiving party may also make good faith requests that the producing party produce additional file types of electronic documents in native format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation. Documents shall be produced as black and white. Upon written request, a party shall produce color images for a reasonable number of selected documents. Documents produced in color shall be produced as JPEG images.

  4. <u>De-duplication</u>. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the receiving party.

  5. Email Threading. The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

  6. <u>Metadata Fields</u>. If the receiving party seeks metadata, the parties agree that only the metadata fields set forth in Appendix A need be produced.

  7. <u>Responsive and Privilege Reviews</u>. Nothing in this agreement shall be construed or interpreted as precluding a producing party from performing a responsiveness and privilege review to determine if documents captured by search terms are in fact relevant to the requesting party's request and not subject to any claim of privilege and/or protection. Further, nothing in this agreement shall be construed or interpreted as requiring the production of all documents or ESI captured by any search term if such documents and/or ESI are in good faith and reasonably

deemed not relevant to the requesting party's request or subject to a claim of privilege and/or protection. The producing party may not redact portions of documents for relevancy without the agreement of the receiving party.

**F.    Processing of Non-Party Documents**

    1.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this agreement with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein. The parties understand that non-parties are not required to comply with this protocol.

    2.    The Issuing Party is responsible for producing to all other parties any documents obtained pursuant to a subpoena to any non-party. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven days of the non-party's production to the Issuing Party.

    3.    Nothing in this agreement is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

//
//
//
//
//
//
//
//
//
//
//
//

| | |
|---|---|
| By: *s/ Steve W. Berman*<br>Steve W. Berman (WSBA #12536)<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 Second Avenue, Suite 2000<br>Seattle, WA 98101<br>steve@hbsslaw.com<br><br>Robert B. Carey (*pro hac vice*)<br>John M. DeStefano (*pro hac vice*)<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>11 West Jefferson, Suite 1000<br>Phoenix, AZ 85003<br>rob@hbsslaw.com<br>johnd@hbsslaw.com<br><br>Marc A. Goldich (*pro hac vice*)<br>AXLER GOLDICH LLC<br>1520 Locust Street, Suite 301<br>Philadelphia, PA 19102<br>mgoldich@axgolaw.com<br><br>David Woloshin (*pro hac vice*)<br>Dina S. Ronsayro (*pro hac vice*)<br>ASTOR WEISS KAPLAN & MANDEL LLP<br>200 South Broad Street, Suite 600<br>Philadelphia, PA 19102<br>dwoloshin@astorweiss.com<br>dronsayro@astorweiss.com<br><br>*Attorneys for Plaintiffs* | By: s/ *Anusha E. Jones*<br>William H. Walsh (WSBA #21911)<br>Anusha E. Jones (WSBA #52989<br>COZEN O'CONNOR<br>999 Third Avenue, Suite 1900<br>Seattle, WA 98104<br>wwalsh@cozen.com<br>aejones@cozen.com<br><br>Wendy Enerson (*pro hac vice*)<br>Peter J. Valeta (*pro hac vice*)<br>COZEN O'CONNOR<br>123 North Wacker Drive Ste. 1800<br>Chicago, IL 60606<br>wenerson@cozen.com<br>pvaleta@cozen.com<br><br>*Attorneys for Defendant Allstate*<br><br>By: s/ *Jason R. Burt*<br>Jason R. Burt (*pro hac vice*)<br>Latham & Watkins LLP<br>555 11th Street NW, Suite 1000<br>Washington, DC 20004<br>Email: jason.burt@lw.com<br><br>Kathleen M. O'Sullivan, WSBA No. 27850<br>Perkins Coie LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101<br>Email: KOSullivan@perkinscoie.com<br><br>Kathleen P. Lally (*pro hac vice*)<br>Latham & Watkins LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL 60611<br>Email: kathleen.lally@lw.com<br><br>*Attorneys for Defendant CCC* |

1 | PURSUANT TO AGREEMENT OF THE PARTIES, IT IS SO ORDERED.

2 | DATED this 12th day of November 2019.

*[Signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

# APPENDIX A: Metadata Fields

| Field Name | Description |
|---|---|
| **ProdBeg** | The Bates number of a produced document. |
| **ProdEnd** | Ending Bates number of a produced document. |
| **ProdBegAttach** | Document ID of parent record. |
| **ProdEndAttach** | Document ID of last attachment in a family. |
| **PgCount** | Shows the sum of pages of a document. |
| **Custodian** | Displays Custodian information for each document. |
| **CustodiansAll** | Displays all Custodians who had possession, custody, or control of the document prior to deduplication. |
| **MD5Hash** | A unique 128-bit identifier created by a hashing algorithm against the logical content of a file. |
| **SHA1 Hash** | SHA1 Hash value of a document |
| **Author** | Displays the value of the author field from an eDoc's metadata. |
| **FileName** | Displays the original filename of native documents. |
| **Fileext** | File extension (i.e. .TXT, .DOC, .PDF) |
| **FilePath** | Path of original native document. |
| **AllPaths** | For deduplicated documents, list of all file paths for duplicate copies. |
| **TextPath** | Relative file path of text record within production, including filename and extension of the text file within the production. |
| **To** | Email recipient |
| **From** | Email sender |
| **CC** | Email carbon copy |

| **BCC** | Email blind carbon copy |
|---|---|
| **Subject** | Email subject field |
| **DocTitle** | Shows the contents of the title field from an electronic document's metadata. |
| **DateSent** | Email sent date. |
| **TimeSent** | Email sent time. |
| **DateRcvd** | Email received date. |
| **TimeRcvd** | Email received time |
| **DateCrtd** | eDoc creation date |
| **TimeCrtd** | eDoc creation time |
| **DateMod** | eDoc modified date |
| **TimeMod** | eDoc modified time |
| **TimeZone** | Indicates the TimeZone a document was processed in (i.e. GMT, EST). |
| **TextLink** | Path to the extracted/OCR text file. |
| **NativeLink** | Native file path for native documents. |
| **Redacted** | Whether the document contains redactions (Y or N). |
| **ConfidentialityTreatment** | Confidentiality designation(s). |